IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NARANTUYA ANAND, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> JOHN C. HEATH, ATTORNEY AT LAW PLLC DBA LEXINGTON LAW FIRM; PROGREXION MARKETING INC.; FLUENT, INC.; AND REWARD ZONE USA, LLC, <br><br> Defendants. | No. 19-CV-00016 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiff Narantuya Anand brought a putative class action complaint alleging that she received unsolicited telemarketing calls to her cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. Two of the defendants, Fluent Inc. ("Fluent") and Reward Zone USA LLC ("Reward Zone") (collectively, "the defendants"), moved to compel arbitration, arguing that Anand agreed to arbitrate her claims when she registered on www.retailproductzone.com. Anand responds that she did not affirmatively manifest her assent to an arbitration agreement on that website. The defendants' motion to compel arbitration is denied because they have failed to show that Anand assented to the terms and conditions when navigating through the website.

## BACKGROUND

In June 2017, Anand registered on the website www.retailproductzone.com and completed a survey on that website to receive a free gift card. The website is owned and operated by Reward Zone, which is a wholly-owned subsidiary of Fluent. Defendant John C. Heath, Attorney at Law

PLLC, d/b/a Lexington Law Firm ("Lexington") hired defendant Progrexion Marketing, Inc. ("Progrexion") to market Lexington's services to consumers. Progrexion, in turn, contracted with Fluent to gather consumers' personal information through websites including www.retailproductzone.com and to contact such consumers on behalf of Lexington. The defendants contend that when Anand registered on the website, she submitted her contact information, including her phone number, and expressly consented to being contacted at that number by or on behalf of marketing partners including HomeHelp, which is a registered business name of Fluent, and Lexington. Anand denies that she consented to being contacted and alleges that during July 2017 she received several unwanted telemarketing voicemails and text messages from the defendants on behalf of Lexington. At least some of the calls and texts were made from a phone number that Anand believes belongs to Fluent.

When Anand navigated through the www.retailproductzone.com website in 2017, the words "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy" were displayed above a "Continue" button, as depicted in the image below.

> I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy .
>
> **Continue**

Bhadania Aff. ¶ 9, ECF No. 22-1. Clicking the underlined "Terms & Conditions" hyperlink would have directed Anand to a page that displays the full terms and conditions. The terms and conditions included, among other things, an "Arbitration/Dispute Resolution" provision, which provided that "[t]he arbitrator will have exclusive authority to resolve any dispute including any claim that all or part of the Terms & Conditions, including this provision, are unenforceable." Bhadania Aff.,

Ex. A, Reward Zone Terms and Conditions, PageID # 73, ECF No. 22-2. The defendants offer no evidence that Anand clicked on the Terms and Conditions hyperlink, or ever saw the terms and conditions posted on the site, but they do maintain that Anand clicked the "Continue" button and ultimately completed a survey on the website. For her part, Anand asserts without explanation that there is no evidence to support the defendants' representations regarding the text relating to the manner in which the site presented the Terms and Conditions hyperlink and the "Continue" button. Resp. 4–5, ECF No. 31. She points out that a 2019 screenshot of a page of the www.retailproductzone.com website shows a notice about mandatory arbitration and the terms and conditions located in the footnotes of the page. *See* Resp. 5 n.9, Ex. A, ECF Nos. 31, 31-1.

Defendants Fluent and Reward Zone have moved to compel arbitration, requesting that the Court dismiss Anand's complaint or stay the case pending arbitration. Mot. to Compel Arbitration, ECF No. 21. Fluent and Reward Zone contend that both of them are entitled to enforce the arbitration agreement because Anand agreed to arbitrate with both companies and because Anand's claims against the parent company (Fluent) and its wholly-owned subsidiary (Reward Zone) are intertwined. *See* Mem. 3, ECF No. 22 (stating that "both Reward Zone and Fluent are among the parties with whom Plaintiff agreed to arbitrate [her] disputes"); *see also id.* at 2 n.2 (stating that Anand's claims against Fluent are intertwined with the allegations against Reward Zone and the underlying contractual obligations, as her claims against both companies arise from her use of www.retailproductzone.com). Although defendants Progrexion and Lexington did not join the motion to compel arbitration, they asserted in their respective affirmative defenses that if Anand agreed to arbitrate the dispute, then this case should be dismissed or stayed pending arbitration. *See* Def. Lexington's Answer to Pl.'s Class Action Compl. 23 (Thirteenth Affirmative Defense), ECF No. 24; *see also* Def. Progrexion's Answer to Pl.'s Class Action Compl. 23

(Thirteenth Affirmative Defense), ECF No. 25. Anand contends that she did not enter into an enforceable arbitration agreement, and that she is at least entitled to an evidentiary hearing because she has raised a genuine dispute of material fact as to the enforceability of the arbitration agreement. Fluent and Reward Zone respond that arbitration is required as a matter of law.

## DISCUSSION

### I.  Standard

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed with arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. But "[i]f the making of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof." *Id.* "Under the FAA, arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). Anand does not dispute that the scope of the arbitration agreement would cover her claims. Instead, Anand opposes arbitration claiming that the arbitration agreement is not enforceable because she never agreed to arbitrate claims arising from her use of the website.

"Whether the parties have validly agreed to arbitrate is governed by state-law principles of contract formation." *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809 (7th Cir. 2011). The defendants contend that New York substantive law applies because the arbitration

4

agreement contains a New York choice-of-law provision.[1] Anand has not responded to this contention, nor has she suggested that the law of another jurisdiction should apply. The parties have made no argument that application of contract formation principles of one jurisdiction as opposed to another's would affect the outcome. The Court also discerns no meaningful differences in contract formation principles among the jurisdictions to which the parties have cited. Accordingly, the Court relies primarily on the substantive law of the forum state, Illinois. *Cf. Faulkenberg*, 637 F.3d at 809 (applying Illinois substantive law to issue of contract formation notwithstanding contract's choice-of-law provision).

Formation of a contract in Illinois requires an objective manifestation of "a meeting of the minds or mutual assent as to the terms of the contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (citation omitted); *see also Bank Computer Network Corp. v. Cont'l Ill. Nat'l Bank and Trust Co. of Chicago*, 442 N.E.2d 586, 591 (Ill. App. Ct. 1982) ("The intention of the parties [to manifest mutual assent] must in some way be communicated, since a person's intention can be ascertained by another only by means of outward expressions such as words and acts."). Assent to contractual terms requires knowledge of those terms; "[a] party cannot assent to terms of which it has no [actual] or constructive" knowledge. *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1066 (D. Nev. 2012); *see also CouponCabin, Inc. v. PriceTrace, LLC*, No. 18 C 7525, 2019 WL 1572448, at *4 (N.D. Ill. Apr. 11, 2019) ("Courts

---

[1] This puts the cart before the horse. The question of contract formation is antecedent to the enforcement of specific terms of the contract, including a choice-of-law provision. *See Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1006 (N.D. Ill. 2017) ("As this court has explained when deciding that a choice-of-law clause did not govern a formation dispute in an arbitration case, 'as an antecedent matter, the court must determine whether the parties have a valid contract, and, before it can do that, it must decide which state's law applies to the issue of contract formation. Only if the court finds a valid contract may it turn to the choice of law provision in the Agreement . . . .'" (quoting *Kaufman v. Am. Express Travel Related Servs. Co.*, No. 07 C 1707, 2008 WL 287224, at *3 (N.D. Ill. Mar. 7, 2008)).

enforce [certain kinds of Internet] agreements only when there is actual or constructive knowledge of terms.") (citation omitted). "This principle of knowing consent applies with particular force to provisions for arbitration. Clarity and conspicuousness of arbitration terms are important in securing informed assent." *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) (internal citation and quotation marks omitted). A party has constructive knowledge of a contractual term if "she is on inquiry notice of the term and assents to it through the conduct that a reasonable person would understand to constitute assent. Inquiry notice is actual notice of circumstances sufficient to put a prudent man upon inquiry." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012) (internal quotation marks and emphasis omitted); *see also Nicosia v. Amazon.com, Inc.*, No. 14-cv-4513, 2019 WL 2482674, at *8 (E.D.N.Y. June 14, 2019) ("A website user is deemed to be on inquiry notice of contract terms so long as the 'design and content' of the webpage renders 'existence' of those terms 'reasonably conspicuous.'") (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016)).

Here, there is no evidence that Anand had actual notice of the terms and conditions the defendants sought to impose, and the facts necessary to resolve the question of whether she had constructive notice of those terms and conditions (that is, that a reasonable user in Anand's shoes would have understood she was assenting to the terms and conditions by clicking the "Continue" button) are not disputed. The issue of her assent, or lack thereof, may therefore be resolved by the Court. "A trial to determine arbitrability is required . . . only if the issue that an evidentiary hearing would resolve is fairly contestable." *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 671 (7th Cir. 2003). In deciding whether the party opposing arbitration has identified a genuine issue of material fact for a trial on arbitrability, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Tinder v. Pinkerton Sec.*, 305

F.3d 728, 735 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Sanato v. Sears, Roebuck & Co.*, 259 F. Supp. 3d 873, 874-75 (N.D. Ill. 2016) ("The applicable standard is akin to a Rule 56 summary judgment standard.") (citation omitted)).

II.     **No manifestation of assent**

Anand was not placed on reasonable notice that she was manifesting assent to the terms and conditions by clicking the "Continue" button. "Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Sgouros*, 817 F.3d at 1035. By way of example, a "website might be able to bind users to a[n] . . . agreement by placing the agreement, or a scroll box containing the agreement, or a clearly labeled hyperlink to the agreement, next to an "I Accept" button that unambiguously pertains to that agreement." *Id.*

Courts often group online agreements into one of two categories: "Clickwrap" agreements, in which "users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use," and "browsewrap" agreements, "where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). Courts are reluctant to enforce browsewrap agreements, because unlike clickwrap agreements, which "require the user to manifest assent to the terms and conditions expressly," a party to a browsewrap agreement is purported to have assented to it "simply by using the website." *Id.* at 1176. Many online agreements do not fit neatly into these two categories, however, so courts also consider so-called "hybridwrap" agreements that share characteristics of each. Hybridwrap agreements typically prompt the user to manifest assent after "merely present[ing] the user with a hyperlink to the terms and conditions, rather than displaying the terms themselves." *Nicosia v. Amazon.com, Inc.*, No. 14-cv-4513, 2019 WL 2482674, at *8 (E.D.N.Y. June 14, 2019).

Accepting the defendants' graphic representation of the relevant portion of the Reward Zone site,[2] that configuration presents what can best be described as a hybridwrap agreement because the terms and conditions were hyperlinked rather than displayed to the user in full, and the user's ability to continue through the site was not conditioned on her express assent to the terms and conditions. Courts typically "will give effect to hybridwrap terms where the button required to perform the action manifesting assent . . . is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms." *Id.* (collecting cases). "The more the hybridwrap design diverges from this basic layout—such as by placing the notice further away from the action button, cluttering the screen with potentially distracting content, or omitting the language explicitly saying that by performing action the user agrees to be bound by the terms—the less likely courts are to find that inquiry notice has been provided." *Id.* (collecting cases).

The hybridwrap agreement here is unenforceable because nothing expressly linked the "I understand and agree . . ." language to the "Continue" button. There was no "notice informing the user that, by clicking the button, the user [wa]s agreeing to" the terms and conditions. *Id.* Anand was not, for example, presented with an "'I agree' box after being presented with a list of terms and conditions of use," nor was she otherwise "require[d] . . . to manifest assent to the terms and conditions expressly." *Nguyen*, 763 F.3d at 1175–76. To be sure, Anand took the affirmative step

---

[2] Anand's contention that there is no evidence to support the accuracy of the defendants' graphic regeneration of the relevant page of the website, *see* Resp. 4–5, ECF No. 31, ignores that the graphic representation was set forth in a sworn affidavit, *see* Bhadania Aff. ¶ 9, ECF No. 22-1. Anand offers no contrary view of the evidence aside from a 2019 version of a www.retailproductzone.com webpage. *See* Resp. 5, n.9, ECF No. 31. The 2019 webpage is not relevant because Anand has not proffered any evidence or made any argument explaining how that 2019 webpage relates to Anand's user experience when she navigated through the site in 2017. The Court's ruling is based whether Anand had constructive knowledge of, and assented to, the terms in 2017.

of clicking the "Continue" button to proceed through the website to the survey. But the website did not include language explaining that clicking the "Continue" button would constitute assent to the terms and conditions or that continuation was conditioned on such assent. Indeed, there is no connection between the statement "I understand and agree . . ." and the "Continue" button apart from the placement of the text above the button. But the mere proximity of a terms and conditions hyperlink to a button that the user must click to proceed does not equate to an affirmative manifestation of assent to the terms and conditions. *See id.* at 1179 ("even close proximity of the hyperlink to the relevant buttons users must click on—without more—is insufficient to give rise to constructive notice"). The problem for the defendants is not that the notice regarding mandatory arbitration and the terms and conditions hyperlink were insufficiently conspicuous (though that point is arguable), but rather that there was nothing that told the user that she would manifest her assent to those terms and conditions by clicking "Continue." There was simply nothing presented to Anand that conditioned her continued navigation on the site to acceptance of the terms and conditions available through the hyperlink. She cannot, therefore, be said to have manifested assent to the statement that she understood and agreed to those terms and conditions by pressing the "Continue" button. *See Specht*, 306 F.3d at 29–30 ("[A] consumer's clicking on a . . . button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the . . . button would signify assent to those terms.").

    The agreements at issue in the cases cited by the defendants where courts enforced the terms are readily distinguishable because those agreements included language expressly linking an action by the user to the manifestation of assent. *See, e.g.*, *Fjeta v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012) (plaintiff "was informed of the consequences of his assenting click" where language read "[b]y clicking Sign Up, you are indicating that you have read and agree

to the Terms of Service"); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 71 (2d Cir. 2017) (text explained that "[b]y creating an Uber account, you agree . . . ."); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 195 (2d Cir. 2015) (text explained that "[c]onfirmation of your reservation means that you have . . . agreed . . ." and that "[b]y booking a trip, you agree . . ."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) (text explained that "[b]y proceeding, you . . . are agreeing . . ."). Other cases enforcing terms of online agreements do so where the user is shown text explaining that their ability to continue is conditioned on their assent. *See, e.g.*, *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121–22 (Ill. App. Ct. 2005) ("The statement that the sales were subject to the defendant's 'Terms and Conditions of Sale,' combined with making the 'Terms and Conditions of Sale' accessible online by blue hyperlinks, was sufficient notice to the plaintiffs that purchasing the computers online would make the 'Terms and Conditions of Sale' binding on them."); *Brueggemann v. NCOA Select, Inc.*, No. 08–80606–Civ, 2009 WL 1873651, at *2 (S.D. Fla. June 30, 2009) ("[P]rior to entering the website, individuals [we]re told, '[e]ntering this Site will constitute your acceptance of these terms and conditions. If you do not agree to abide by these terms, please do not enter the Site.'"). But here, there was no language that linked the notice regarding mandatory arbitration or the terms and conditions to the "Continue" button, and Anand was permitted to click the "Continue" button to continue through the site without expressly manifesting her assent.

      The moving defendants, Fluent and Reward Zone, have not requested an evidentiary hearing, nor would they be entitled to one. As a matter of law, mere "close proximity of the hyperlink to the relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Nguyen*, 763 F.3d at 1179; *see also Am. Int'l Specialty Lines*, 347 F.3d at 671 ("A trial to determine arbitrability is required . . . only if the issue that an evidentiary hearing

10

would resolve is fairly contestable."). The other defendants, Lexington and Progrexion, have not moved to compel arbitration. Lexington and Progrexion have stated in their respective affirmative defenses that "[t]o the extent Plaintiff has agreed to arbitrate this dispute, the Complaint violates that agreement and this matter should be dismissed and/or stayed pending arbitration." ECF Nos. 24, 25 (Thirteenth Affirmative Defenses). Lexington and Progrexion have made no argument explaining why that should be the result, nor have they filed or joined any motion requesting relief. Accordingly, the case against all defendants will proceed.

\* \* \*

For the reasons stated above, Fluent and Reward Zone's motion to compel arbitration [21] is denied.

Dated: June 28, 2019

John J. Tharp, Jr.
United States District Judge